IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01326-WJM-KLM

MINOR MICHAEL STILL,

   Applicant,

v.

MARY HERNDON, Administrative Service, U.S. Marshal, Colorado,
KEN DEAL, Deputy United States Marshal, Colorado, and
HARLEY LAPPIN, Director, Federal Bureau of Prisons,

   Respondents.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

   This matter is before the Court on an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Docket No. 2; Filed June 8, 2009] (the "Application") filed by Minor Michael Still ("Applicant").  Respondents filed an Answer [Docket No. 18] in opposition to the Application on September 28, 2009.  On October 15, 2009, Applicant filed a Traverse [Docket No. 25].  On February 22, 2011, the parties filed a Joint Status Report [Docket No. 45] pursuant to the Order [Docket No. 43] of District Judge William J. Martínez.  On March 24, 2011, the parties filed a Supplemental Joint Status Report [Docket No. 48].  On April 13, 2011, Respondents filed a Supplemental Status Report [Docket No. 54] in response to this Court's Order [Docket No. 50].  The Application is now ripe for resolution.  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C, the Application has been referred to this Court for a recommendation regarding disposition.  *Order to Show*

*Cause Why Habeas Petition Should Not be Granted and Referring Action* [Docket No. 16]. The Court has considered the relevant pleadings and the applicable case law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court recommends that the Application be **DENIED**.

## I.  Summary of the Case

On May 22, 2003, Applicant began a program of Intensive Supervision Parole ("ISP") with the Colorado Department of Corrections ("CDOC") while serving a nine-year sentence that was imposed by the Denver District Court in Case No. 97CR2258 on July 14, 1998 for "two counts of being a habitual criminal and one count of theft."  *United States v. Still*, No. 05-cr-00014-REB, Docket No. 43 at 1, 2005 WL 3478350, at *1 (D. Colo. Dec. 20, 2005) (unreported decision) (Order Concerning Defendant's Petition for Writ of Habeas Corpus); *see also Supplement to Applicant's 28 U.S.C. § 2241 Petition* (the "*Supplement*") [Docket No. 33] at 6 (October 30, 2009 letter from the Federal Bureau of Prisons stating that Applicant was "sentenced in Case No. 97CR2258 to a . . term of imprisonment").  On March 31, 2004, Applicant "escaped from ISP."   *Reply to Preliminary Response of Respondents* (the "*Reply*") [Docket No. 17] at 6; *see Supplement* [#33] at 6 (stating that Applicant "absconded" from March 31, 2004 until January 1, 2005).  A state warrant was issued for his arrest in Case No. 05CR152.  *Reply* [#17] at 6.

On December 30, 2004, a United States Magistrate Judge issued a warrant for Applicant's arrest in Case No. 05-cr-00014-REB on charges of pretending to be an employee of the Internal Revenue Service in violation of 18 U.S.C. § 912.  *Still*, No. 05-cr-00014-REB, Docket No. 2 (D. Colo. Dec. 30, 2004) (Arrest Warrant).  On January 1, 2005,

Applicant was arrested by the Denver Police Department pursuant to the state arrest warrant. *See Answer* [#18] at 2; *Reply* [#17] at 6. On January 3, 2005, the Denver Police Department remanded Applicant to the temporary custody of the United States Marshal pursuant to a writ of habeas corpus ad prosequendum issued on the basis of the outstanding federal arrest warrant in Case No. 05-cr-00014-REB. *Reply* [#17] at 6; *Supplement* [#33] at 6. Applicant was indicted by the federal grand jury on January 4, 2005, and he was arraigned on January 10, 2005. *Still*, No. 05-cr-00014-REB, Docket No. 3 (D. Colo. Jan. 4, 2005) (Indictment); *id.*, Docket No. 8 (D. Colo. Jan. 10, 2005) (Courtroom Minutes for Arraignment). During the pendency of his federal case, Applicant remained in temporary federal custody.[1] *See Reply* [#17] at 6 (stating that Applicant remained in federal custody during the period from January 3, 2005 through June 24, 2005); *Still*, No. 05-cr-00014-REB, Docket No. 10 (D. Colo. Jan. 11, 2005) (Order of Detention).

While still in temporary federal custody, Applicant was convicted in Denver District

---

[1] Applicant's exact physical location during the pendency of his federal case is inapposite. Pursuant to the writ of habeas corpus ad prosequendum and the Order of Detention, *Still*, No. 05-cr-00014-REB, Docket No. 10 (D. Colo. Jan. 11, 2005), Applicant was effectively in the temporary custody of the United States Marshal for this entire period of time, regardless of where he was housed on a day-to-day basis. *See Supplement* [#33] at 2 (stating that Applicant remained in the Denver County Jail from January 5, 2005 through June 24, 2005); *Traverse* [#25] at 12 (stating that from January 5, 2005 through July 2005 Applicant was "housed as a 'prisoner of the USMS' in both the Denver County Jail and the Teller County Jail"). However, because the United States Marshal's custody was merely temporary, Applicant was not in "official federal detention" such that he should receive credit towards the completion of his federal sentence for the period of time that he was detained pending resolution of his federal case, i.e., January 3, 2005 through June 24, 2005. *Carlsen v. Wands*, No. 10-cv-00475-MSK-MJW, 2011 WL 97240, at *2 (D. Colo. Jan. 12, 2011) (unreported decision) ("When a state transfers a person in custody to the federal government pursuant to a writ of habeas corpus ad prosequendum, the detention is generally recognized as being temporary; the defendant is not regarded as being in 'official detention' by the federal authorities. The time spent in federal detention under such a writ is credited against the state sentence but not against the federal sentence." (citations omitted)).

Court of attempted escape in Case No. 05CR152.  *Reply* [#17] at 6.  On March 28, 2005, he was sentenced to two years imprisonment with CDOC.  *Id.*; *District Court City and County of Denver Sentencing Memorandum* [Docket No. 18-1].  After this sentencing, Applicant remained in temporary federal custody pending resolution of his federal case.

On June 24, 2005, Applicant was sentenced in Case No. 05-cr-00014-REB to 36 months imprisonment with the Federal Bureau of Prisons ("BOP") after entering a guilty plea to one count of pretending to be an employee of the Internal Revenue Service in violation of 18 U.S.C. § 912.  *Application* [#2] at 3; *Judgment in Case No. 05-CR-00014-REB* [Docket No. 18-2]; *Still*, No. 05-cr-00014-REB, Docket No. 24 (D. Colo. Jun. 24, 2005) (Minutes of Sentencing Hearing).  **This federal prison term was to be served consecutive to Applicant's undischarged state prison terms (i.e., any time remaining to be served on the nine-year sentence imposed in Case No. 97CR2258 plus the two-year sentence imposed in Case No. 05CR152)**.  *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); *Still*, No. 05-cr-00014-REB, Docket No. 43 at 1, 2005 WL 3478350, at *1 (D. Colo. Dec. 20, 2005) ("I have not ordered that Still's 36-month federal sentence be served concurrently with any of his pending state sentences.").[2]

---

[2] As explained below in Part II.E. of this Recommendation, Applicant appears not to understand that his 36-month federal sentence was to run consecutive to his state sentences from Case Nos. 97CR2258 and 05CR152.  Shortly after he was sentenced by Judge Blackburn, Applicant filed a Petition for Writ of Habeas Corpus, *Still*, No. 05-cr-00014-REB, Docket No. 35 (D. Colo. Filed Oct. 13, 2005), in which he sought to have Judge Blackburn clarify that the 36-month federal sentence was to run concurrently with the state sentences.  The Petition was denied on December 20, 2005.  *Still*, No. 05-cr-00014-REB, Docket No. 43, 2005 WL 3478350 (D. Colo. Dec. 20, 2005).  In the instant Application [#2], Applicant reasserts his contention that his 36-month federal sentence was to run concurrently with his state sentences.

"After the June 24, 2005, sentencing hearing, [Applicant] was transported to a [CDOC] facility." *Still*, No. 05-cr-00014-REB, Docket No. 43 at 3, 2005 WL 3478350, at *1 (D. Colo. Dec. 20, 2005); *Prisoner Remand or Order to Deliver and Receipt for United States Prisoners* [Docket No. 18-3] (showing that Applicant was remanded from the custody of the United States Marshal to the custody of CDOC on June 27, 2005). Applicant was to continue serving what remained of his original nine-year state sentence imposed in Case No. 97CR2258 plus the additional two-year state sentence imposed in Case No. 05CR152. On July 6, 2005, the United States Marshal filed a Detainer [Docket No. 18-4] with CDOC stating as follows: "Prior to [Applicant's] release from your custody, please notify this office at once so that we may assume custody of [Applicant] for service of his Federal sentence of imprisonment."

On May 6, 2007, Applicant was released on parole by CDOC. *Reply* [#17] at 6. However, at the time of his release, CDOC located an outstanding warrant for his arrest on a charge of theft issued by the Jefferson County District Court in Case No. 05CR108. *Id.* Pursuant to the arrest warrant, Applicant was remanded from the custody of CDOC to the custody of the Jefferson County Jail. *Id.* Thus, rather than entering the custody of the United States Marshal pursuant to the Detainer [#18-4] to begin service of his 36-month federal sentence, Applicant remained in state custody.

On June 25, 2007, Applicant pled guilty in Jefferson County District Court to one count of theft in violation of Colo. Rev. Stat. § 18-4-402. *Id.* at 8 (document titled "Combined Court, Jefferson County, State of Colorado Judgment of Conviction in Case No. 05CR108"). Applicant was sentenced to five years imprisonment with CDOC. *Id.* The sentencing judge, Judge Randall C. Arp, **indicated that the five-year sentence was to**

**be served concurrently with Applicant's undischarged 36-month federal sentence**. *Id.* After the sentencing, Applicant was conveyed from the Jefferson County Jail to the custody of CDOC. *See id.*

Applicant filed a petition for a writ of habeas corpus in state court "challeng[ing] the structure of the [imposed sentence] in case number 05CR108 and his place of confinement." *Application* [#2] at 4. Applicant sought to be transferred from the custody of CDOC to the custody of the United States Marshal (and ultimately BOP) so that he could begin serving his 36-month federal sentence. *See id.* Applicant recognized that "'the State of Colorado [would] give [him] credit [towards the completion of his five-year sentence imposed in Case No. 05CR108] for any time he serve[d] in federal custody'" while "'the federal government [would] not give [him] credit [towards the completion of his 36-month federal sentence imposed in Case No. 05-cr-00014-REB] for any time he serve[d] in state custody.'" *Reply* [#17] at 10 (quoting the response of the Attorney General of Colorado to Applicant's appeal of the denial of his application for a writ of habeas corpus that was filed in state district court). Ultimately, the Colorado courts determined that (1) Applicant was lawfully in CDOC's custody, and (2) they were powerless to order the United States Marshal or BOP to take custody of Applicant.

On July 24, 2008, the United States Marshal filed a new Detainer [Docket No. 18-7] with CDOC stating as follows: "Prior to [Applicant's] release from your custody, please notify this office at once so that we may assume custody of [Applicant] for service of his Federal sentence of imprisonment."

On June 8, 2009, Applicant filed the instant Application [#2]. The Application sets out three claims for relief. First, Applicant contends that Respondents violated some of his

unspecified "constitutional rights" by remanding him to the custody of CDOC on June 27, 2005 instead of retaining custody so that he could immediately begin serving his 36-month federal sentence.[3] *Application* [#2] at 6.  He asserts that forcing him to serve his 36-month federal sentence in "installments" is unconstitutional.  *Id.*  He argues that because he was in the temporary custody of the United States Marshal at the time of his federal sentencing hearing on June 24, 2005, he should have immediately begun to serve his federal sentence upon conclusion of the hearing instead of being remanded to the custody of CDOC to serve his undischarged state sentences from Case Nos. 97CR2258 and 05CR152.  *See id.* (asserting that there is a legal principle requiring that a sentence should be continuous "unless interrupted by some fault of the prisoner").  Applicant appears to seek relief only in the form of an order directing that he be transferred from the custody of CDOC to the custody of BOP so that he can serve his 36-month federal sentence.  *See id.* at 10.

Second, Applicant contends that BOP violated the rights guaranteed to him by the Fifth, Eighth, and Fourteenth Amendments by failing to designate CDOC facilities as the place of service of his 36-month federal sentence at the time he entered CDOC custody on June 27, 2005.[4]  *Id.* at 9.  Applicant asserts that District Judge Robert E. Blackburn "maintained silence" at the June 24, 2005 sentencing hearing in Case No. 05-cr-00014-REB "as to whether the [36-month sentence] was to be served concurrently or consecutively with the previously imposed state sentence[s] Applicant was serving at the

---

[3] In the Application, this claim is "Claim Two," but the Court finds it most logical to address it first.

[4] In the Application, this claim is "Claim Three," but the Court finds it most logical to address it second.

time." *Id.* at 8-9; *see Still*, No. 05-cr-00014-REB, Docket No. 24 (D. Colo. Jun. 24, 2005) (Minutes of Sentencing Hearing).   Applicant argues that Judge Blackburn's alleged silence at the hearing trumps his subsequent written Order, *Still*, No. 05-cr-00014-REB, Docket No. 43, 2005 WL 3478350 (D. Colo. Dec. 20, 2005), specifying that the 36-month sentence was to be served consecutive to the previously imposed state sentences. *See Application* [#2] at 8 (stating that "[w]hen a sentencing court's oral pronouncement of sentence and the court's written sentence are in conflict, the oral sentence prevails" (citations omitted)). Applicant appears to believe that when a federal district judge is silent at a sentencing hearing on the issue of whether the sentence being imposed is to run concurrently with or consecutive to a previously imposed state sentence, the default rule is that the federal sentence should run concurrently with the state sentence.[5]   Based on this belief, Applicant argues that when he was remanded to the custody of CDOC on June 27, 2005, BOP was required to designate CDOC facilities as the place of service of his 36-month federal sentence because this sentence was meant to run concurrently with his undischarged state sentences from Case Nos. 97CR2258 and 05CR152. *See id.* at 6.   Applicant seeks relief in the form of an order directing BOP to designate, *nunc pro tunc,* CDOC facilities as the place of service of his 36-month federal sentence beginning on June 27, 2005 (the date Applicant was remanded to CDOC to serve his sentences from 97CR2258 and 05CR152). *Id.*

---

[5] As explained below in Part II.E. of this Recommendation, Applicant's understanding of the law is mistaken.  When a federal judge is silent on the question of whether the sentence he is imposing will run consecutive to or concurrently with a previously imposed sentence, the default rule that controls is that the new sentence will run consecutive to the previously imposed sentence. 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); *see also Still*, No. 05-cr-00014-REB, Docket No. 43, 2005 WL 3478350 (D. Colo. Dec. 20, 2005).

Third, Applicant contends that he was denied due process when he contacted BOP after his sentencing in Case No. 05CR108 in an effort to have CDOC facilities designated as the place of service of his 36-month federal sentence beginning on June 25, 2007 (the date of sentencing in Case No. 05CR108).[6] *Id.*  Applicant argues that BOP failed to provide him with an administrative review of his request.  *Id.*  Applicant explains that if BOP had designated CDOC facilities as the place of service of his federal sentence beginning on June 25, 2007, he would have received credit toward the completion of that sentence while serving the five-year state sentence imposed in Case No. 05CR108.  *Id.*  Applicant's third claim seeks relief in the form of an order directing BOP to designate, *nunc pro tunc*, CDOC facilities as the place of service of his 36-month federal sentence beginning on June 25, 2007.  *See id.*

On February 1, 2011, Applicant notified the Court that he would be released from the custody of CDOC into the custody of the United States Marshal (and ultimately BOP) pursuant to the Detainer [#18-7] on February 3, 2011.  *Notice of Change of Address* [Docket No. 41].  Applicant is now in the custody of BOP serving the 36-month sentence imposed in Case No. 05-cr-00014-REB.  *See id.*; *Joint Status Report* [#45] at 3 ("earlier this month, Applicant was transferred to the Federal Bureau of Prisons"); *Notice of Change of Address* [Docket No. 53] (noting that Applicant is in BOP custody).

## II. Analysis

### A.    Applicant's *Pro Se* Status

Applicant is proceeding *pro se*.  Therefore, the Court must construe his Application

---

[6] In the Application, this claim is "Claim One," but the Court finds it most logical to address it last.

and other pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In this regard, the Court must carefully weigh the need for Applicant to present his claims against any procedural errors he may have committed.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).  However, the Court is not Applicant's advocate, and it must deny his Application if it is based on no more than vague or conclusory allegations.  *Hall*, 935 F.3d at 1110.

**B.     Standard of Review**

28 U.S.C. § 2241(c) provides as follows:

The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him into court to testify or for trial.

In this case, Applicant was a state prisoner at the time he filed his Application. However, as explained below in Part II.C. of this Recommendation, Applicant does not challenge the lawfulness of his state imprisonment.  Instead, Applicant challenges the lawfulness of the manner in which his 36-month federal sentence is being executed. Accordingly, the Application in this case is not subject to 28 U.S.C. § 2254, and the Court

reviews it under 28 U.S.C. § 2241.[7] *Carlsen*, 2011 WL 97240, at *1 ("An action brought by a federal prisoner pursuant to 28 U.S.C. § 2241 is one that challenges the execution of a sentence." (citing *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005))).

## C.    Propriety of Respondents

Generally, the proper respondent to be named in an application for a writ of habeas corpus is the applicant's "*present* custodian" at the time the application is filed.  *Blango v. Thornburgh*, 942 F.2d 1487, 1492 (10th Cir. 1991) (emphasis added); *Reinig v. Colorado*, No. 10-cv-02473-BNB, 2010 WL 5341930, at *2 (D. Colo. Dec. 21, 2010) (unreported decision) ("The law is well established that the *only* proper respondent to a habeas corpus action is the applicant's custodian, i.e., the warden of the facility in which the applicant is housed." (citations omitted) (emphasis added)); *see* 28 U.S.C. § 2242 (the "application for a writ of habeas corpus shall . . . allege . . . the name of the person who has custody over [the applicant] and by virtue of what claim or authority"); *see Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) ("It is well-established that jurisdiction attaches on the initial filing for habeas corpus relief.").  "The rationale for naming as respondent the

---

[7] In the Tenth Circuit, an application for a writ of habeas corpus that challenges the "validity" of a state prisoner's state conviction or sentence is subject to the requirements of § 2254. *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) (explaining the difference between actions brought under § 2241 and actions brought under § 2254).  By contrast, an application for a writ of habeas corpus that is "an attack on the execution of [a state prisoner's state] sentence" is subject only to the requirements of § 2241.  *Id.*; *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence." (internal citations omitted)); *Medberry v. Crosby*, 351 F.3d 1049, 1062 n.8 (11th Cir. 2003) ("the [Court of Appeals for the] Tenth Circuit permits state prisoners to proceed under § 2241 when it would permit a federal prisoner to file a similar petition for a writ of habeas corpus under § 2241").  In this case, although Applicant was a state prisoner at the time he filed his Application, the Application only challenges his *federal* sentence.  *See Traverse* [#25] at 10 ("This is a challenge to the execution of" the federal sentence imposed in Case No. 05-cr-00014-REB.).  Thus, the Application is not subject to the requirements of § 2254.

person actually holding the [applicant] in custody is undisputed." *Blango*, 942 F.2d 1492 at n.10 (collecting cases).

In this case, at the time Applicant filed his Application on June 8, 2009, he was in the custody of CDOC serving the five-year sentence imposed in Case No. 05CR108.[8] Thus, Applicant ordinarily should have named the warden of the CDOC facility where he was incarcerated as the respondent to the Application. However, the Application does not challenge the lawfulness of CDOC's custody. Applicant does not attack the validity of his state conviction in Case No. 05CR108. He also does not challenge the lawfulness of the five-year sentence imposed in the case or the execution of that sentence. Instead, Applicant only challenges the execution of his 36-month federal sentence. *See Traverse* [#25] at 10 ("[T]his matter before the Court is not a challenge to the validity of the state sentence 05CR108 or the federal sentence case number [05-cr-00014-REB]. This is a challenge to the *execution* of those sentences imposed." (emphasis added)).

Although he was not physically in the custody of the United States Marshal or BOP at the time he filed his Application, Applicant was still effectively subject to their custody pursuant to the Detainer [#18-7]. The Detainer provided the United States Marshal (and ultimately BOP) with the authority to immediately take physical custody of Applicant upon completion of his five-year state sentence. Thus, the Detainer was a "significant restraint on [Applicant]'s liberty not shared by the general public," *Allen v. Briggs*, 331 F. App'x 603, 606 (10th Cir. 2009), or by other CDOC inmates such that it effectively placed Applicant in

---

[8] The fact that Applicant was transferred from the custody of CDOC to the custody of BOP on or about February 3, 2011 – long after the Application was filed – is inapposite. The Court addresses the propriety of Respondents at the time the Application was filed. *See Santillanes*, 754 F.2d at 888.

federal custody for purposes of habeas corpus jurisdiction.[9] *Peyton v. Rowe*, 391 U.S. 54, 64-65 (1968) (for the purpose of § 2241, a state prisoner is in federal custody when he has a consecutive federal sentence that he has not yet begun to serve); *see also United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) ("[Applicant] satisfies the 'in custody' requirement for habeas purposes because a prisoner may 'challenge a sentence that was imposed consecutively to his current sentence but which he has not yet begun to serve.'" (quoting *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009))).  In short, when an applicant challenges the lawfulness of the execution of a prison sentence pursuant to 28 U.S.C. § 2241, it only makes sense for him to name the persons responsible for executing that sentence as respondents.  Accordingly, the Court finds that Applicant properly named Respondents to his Application.[10]

---

[9] In *Allen*, the Court of Appeals for the Tenth Circuit explained that "the Supreme Court has held that a paroled prisoner is still 'in custody' for purposes of habeas corpus jurisdiction because he is subject to significant restraints on his liberty not shared by the general public." 331 F. App'x at 606 (citing *Maleng v. Cook*, 490 U.S. 488, 491 (1989); *Jones v. Cunningham*, 371 U.S. 236 (1963)).  Just as a paroled prisoner is still subject to liberty restraints, and thus eligible for habeas relief, a state prisoner subject to a federal detainer is subject to a liberty restraint imposed by the federal government and thus is eligible for habeas relief against federal respondents.

[10] Even if the court assumes, *arguendo*, that Respondents were improperly named in the Application, this pleading deficiency does not warrant dismissal or denial of the Application. *See Allen*, 331 F. App'x at 606 ("We do not suggest that every habeas petition that names the wrong respondent must or can be dismissed as frivolous; only those . . . whose choice of respondent 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))); *Frazier v. Jackson*, No. 09-cv-01789-BNB, 2009 WL 2525574, at *1 (D. Colo. Aug. 17 2009) (unreported decision) ("Notwithstanding [applicant]'s failure to name the proper respondent, the Court will address the merits of the application.").  Because Applicant challenges the execution of his federal sentence, he certainly had at least "an arguable basis" for naming Respondents to his Application.  Further, when an application for a writ of habeas corpus names improper respondents, the applicant is generally ordered to amend the application to cure the deficiency.  *See, e.g., Jones v. Mesa County Courts*, No. 10-cv-02458-BNB, 2010 WL 5100592, at *1 (D. Colo. Dec. 8, 2010) (unreported decision); *Hassler v. Smelser*, No. 08-1388, 2009 WL 323075, at *1 (10th Cir. Feb. 10, 2009) (unreported decision).  In this case, the Application passed through the Court's preliminary review process and Applicant was not directed to amend so as to name different respondents.  Accordingly, the Court does not fault Applicant if he named an

### D.    Applicant's First Claim

Applicant contends that Respondents violated some of his unspecified "constitutional rights" by remanding him to the custody of CDOC on June 27, 2005 instead of retaining custody so that he could immediately begin serving his 36-month federal sentence. *Application* [#2] at 6.  He asserts that forcing him to serve his 36-month federal sentence in "installments" is unconstitutional.  *Id.*  He argues that because he was in the temporary custody of the United States Marshal at the time of his federal sentencing hearing on June 24, 2005, he should have immediately begun to serve his federal sentence upon conclusion of the hearing instead of being remanded to the custody of CDOC to serve his state sentences from Case Nos. 97CR2258 and 05CR152.  *See id.* (asserting that there is a legal principle requiring that a sentence should be continuous "unless interrupted by some fault of the prisoner").  Applicant appears to seek relief only in the form of an order directing that he be transferred from the custody of CDOC to the custody of BOP so that he can serve his 36-month federal sentence.  *See id.* at 10.

As an initial matter, the Court finds that Applicant's request for relief is now moot. On February 1, 2011, Applicant notified the Court that he would be released from the custody of CDOC into the custody of BOP pursuant to the Detainer [#18-7] on February 3, 2011.  *Notice of Change of Address* [#41].  Applicant is now in the custody of BOP serving the 36-month sentence imposed in Case No. 05-cr-00014-REB.  *Joint Status Report* [#45] at 3; *Notice of Change of Address* [#53] (noting that Applicant is in BOP custody).  As Applicant is now in BOP custody, there is no need for an order directing that he be

improper Respondent.  *See Clark*, 13 F.3d at 1409 (stating that the Court must weigh Applicant's need to present his claims against any procedural errors he may have committed).

transferred from CDOC custody.  Because Applicant's request for relief is moot, no further consideration of his first claim is necessary.  *See Sannon v. United States*, 631 F.2d 1247, 1250 (5th Cir. 1980) ("Striking at the very heart of federal subject matter jurisdiction, a mootness issue quite clearly can be raised *sua sponte* if not addressed by the parties.").

Nevertheless, the Court briefly corrects Applicant's misunderstanding of the law. There is no constitutional or statutory requirement that a person who has been held in temporary federal detention pending resolution of his federal criminal case while also subject to undischarged state sentences must immediately begin serving his federal sentence as soon as it is imposed.  *Bloomgren v. Belaski*, 948 F.2d 688, 691 (10th Cir. 1991) ("The federal government has no duty" to take a person who has time remaining to serve on a state sentence into custody to begin serving a federal sentence. (citing *Smith v. U.S. Parole Comm'n*, 875 F.2d 1361, 1364 (9th Cir. 1989))); *see Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998) (a federal sentence does not commence immediately when it is imposed); *cf. id.* at 445-46 ("Any statement by the court prescribing when a sentence will begin to run is mere surplusage.  The district court did not have the power to commence [defendant]'s federal sentence [immediately], regardless of whether the court intended to do so and regardless of what the court said." (internal citation omitted)).

The issue of maintaining custody of a person who is subject to both state and federal restraints on his liberty is a "matter of comity between the state and the federal government."  *Brown v. Perrill*, 28 F.3d 1073, 1074 (10th Cir. 1994); *Hayward v. Looney*, 246 F.2d 56, 57-58 (10th Cir. 1957) ("Whether jurisdiction and custody of a prisoner shall be retained or surrendered is a matter of comity and is to be determined by the sovereign having custody.");  *Hernandez v. U. S. Attorney General*, 689 F.2d 915, 918-19 (10th Cir.

1982) ("The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner[.]"); *see also id.* at 918 ("[T]he sovereign having prior jurisdiction and right to custody may waive that right and permit another sovereign to proceed with its prosecution and execution of sentence[.]"); *Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir. 2002) ("The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant." (citations omitted)).   Accordingly, the Court has no basis for ordering that a prisoner be removed from the custody of CDOC and placed in the custody of BOP.  *See Green v. Knowles*, 153 F.3d 727, 1998 WL 458561 at *1-2 (10th Cir. Aug. 3, 1998) (unpublished table decision) (a prisoner's claim seeking relief in the form of an order directing that he be transferred from federal custody to state custody "is not cognizable under [28 U.S.C.] § 2241"); *Taylor*, 164 F.3d at 442-43 (affirming a district court's refusal to order that an inmate be transferred from the custody of "the State of Oregon to the Federal Bureau of Prisons so that his federal sentence would commence").

In this case, at the time Applicant was sentenced by Judge Blackburn on June 24, 2005, his liberty was subject to three restraints: (1) he was in the temporary custody of the United States Marshal pursuant to a writ of habeas corpus ad prosequendum and an Order of Detention issued in Case No. 05-cv-00014-REB; (2) he was required to serve with CDOC the time remaining on the nine-year state sentence imposed in Case No. 97CR2258; and (3) he was required to serve with CDOC the two-year state sentence imposed in Case No. 05CR152.  Thus, at the conclusion of the June 24, 2005 sentencing hearing, the United States Marshal was free to remand Applicant to either the custody of CDOC or BOP.  *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) ("The [Court of

Appeals for the] Tenth Circuit has acknowledged that federal and state authorities' broad discretion includes determining the order in which a prisoner may serve his sentences[.]"); *Hall v. Looney*, 256 F.2d 59, 60 (10th Cir. 1958) (holding that a prisoner who escaped from state prison in the middle of his sentence and was apprehended, charged and tried by federal authorities had no right to complete his state sentence before serving his federal sentence); *see Still*, 2005 WL 3478350, at *2 ("[Applicant]'s state sentences were imposed before his federal sentence, and the State of Colorado has not exhausted its remedy against [Applicant].").

Accordingly, the Court concludes that Respondents did not violate Applicant's constitutional rights on June 27, 2005 by remanding him to the custody of CDOC to serve his state sentences from Case Nos. 97CR2258 and 05CR152 instead of retaining custody so that he could immediately begin serving his 36-month federal sentence.

### E.    Applicant's Second Claim

Applicant next contends that because Respondents did not allow him to immediately begin serving his 36-month federal sentence, BOP should have designated CDOC facilities as the place of service of this sentence at the time he was remanded to CDOC custody on June 27, 2005. *Application* [#2] at 9. Applicant argues that BOP's failure to make such a designation violated the rights guaranteed to him by the Fifth, Eighth, and Fourteenth Amendments. *Id.*

Applicant asserts that District Judge Robert E. Blackburn "maintained silence" at the June 24, 2005 sentencing hearing in Case No. 05-cr-00014-REB "as to whether the [36-month sentence] was to be served concurrently or consecutively with the previously imposed state sentence[s] Applicant was serving at the time." *Id.* at 8-9. He argues that

Judge Blackburn's alleged silence at the hearing trumps his subsequent written Order, *Still*, No. 05-cr-00014-REB, Docket No. 43, 2005 WL 3478350 (D. Colo. Dec. 20, 2005), specifying that the 36-month sentence was to be served consecutive to the previously imposed state sentences. *See Application* [#2] at 8 (stating that "[w]hen a sentencing court's oral pronouncement of sentence and the court's written sentence are in conflict, the oral sentence prevails" (citations omitted)).   Applicant appears to believe that when a federal district judge is silent on the issue of whether the sentence he is imposing is to run consecutive to or concurrently with a previously imposed state sentence, the default rule is that the federal sentence should run concurrently with the state sentence.   Based on this belief, Applicant argues that when he was remanded to the custody of CDOC on June 27, 2005, BOP was required to designate CDOC facilities as the place of service of his 36-month federal sentence because this sentence was meant to run concurrently with his state sentences from Case Nos. 97CR2258 and 05CR152. *See id.* at 6; *see generally Miller*, 594 F.3d at 1242-43 (when a federal court orders that a sentence it is imposing is to run concurrently with a previously imposed state sentence, BOP "'implements such order . . . ordinarily by designating the state facility as the place to serve the federal sentence'" (quoting *BOP Program Statement No. 5160.05*, ¶ 7(b)-(c))).   Applicant seeks relief in the form of an order directing BOP to designate, *nunc pro tunc*, CDOC facilities as the place of service of his 36-month federal sentence beginning on June 27, 2005. *Application* [#2] at 8.

Applicant appears to be correct that Judge Blackburn did not specify at the June 24, 2005 sentencing hearing whether the 36-month sentence was to run consecutive to or concurrently with the undischarged state sentences (i.e., the time remaining to be served

on the nine-year sentence from Case No. 97CR2258 and the two-year sentence from Case No. 05CR152).  *Still*, No. 05-cr-00014-REB, Docket No. 24 (D. Colo. Jun. 24, 2005) (Minutes of Sentencing Hearing).[11]  However, Applicant misunderstands the law governing his federal sentence.  When a federal judge does not expressly order that a sentence is to run concurrently with pending or previously imposed state sentences, the "federal sentence is presumed to be consecutive to [the] state sentences."  *Id.*, Docket No. 43 at 4, 2005 WL 3478350, at *2 (D. Colo. Dec. 20, 2005) (citing 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.")).  In this case, Applicant's state sentences from Case Nos. 97CR2258 and 05CR152 "were imposed before his federal sentence," and Judge Blackburn did not expressly order that the federal sentence he was imposing was to run concurrently.  *Id.*  Accordingly, Applicant's 36-month federal sentence was to be served **consecutive** to the completion of these state sentences.

The Court concludes that because Applicant's 36-month federal sentence was to run consecutive to the completion of his state sentences from Case Nos. 97CR2258 and 05CR152, BOP was not required to designate CDOC facilities as the place of service of the federal sentence at the time Applicant was remanded to CDOC custody on June 27, 2005.  *See BOP Program Statement No. 5160.05* [Docket No. 18-13] at 3 ("No concurrent designation will be considered when statutory language mandates consecutive service[.]").

---

[11] Regardless of whether Judge Blackburn expressly addressed the issue at the June 24, 2005 sentencing hearing, he conclusively ordered on December 20, 2005 that Applicant's 36-month federal sentence was to run consecutive to the completion of his state sentences from Case Nos. 97CR2258 and 05CR152.  *Still*, No. 05-cr-00014-REB, Docket No. 43, 2005 WL 3478350 (D. Colo. Dec. 20, 2005).

Applicant's constitutional rights were not violated, and he is not entitled to relief on his second claim. *See Miller*, 594 F.3d at 1243 ("Because [applicant]'s federal sentence was . . . to run consecutive to his state sentence, the district court's [order] dismissing [his application] with prejudice is affirmed.").

### F.    Applicant's Third Claim

Applicant contends that he was denied due process when he contacted BOP after his sentencing in Case No. 05CR108 in an effort to have CDOC facilities designated as the place of service of his 36-month federal sentence beginning on June 25, 2007. *Application* [#2] at 6 (arguing that the "failure of [BOP] and Respondent Lappin to provide Applicant with an administrative review, after Applicant requested designation of [CDOC facilities] as his place of confinement, violated Applicant's 5th . . . Amendment rights").   Applicant alleges that after he began serving his five-year sentence imposed in Case No. 05CR108 on June 25, 2007, he contacted BOP to request that it designate CDOC facilities as the place of service of his 36-month federal sentence. *Id.*  He argues that BOP failed to provide him with an administrative review of this request. *Id.*  He explains that if BOP had designated CDOC facilities as the place of service of his federal sentence, he would have received credit toward the completion of that sentence while serving his five-year state sentence. *Id.*

Applicant's third claim seeks the following relief: an order directing BOP to designate, *nunc pro tunc*, CDOC facilities as the place of service of his 36-month federal sentence beginning on June 25, 2007 (the date he was sentenced in Case No. 05CR108). *See id.*  "This designation, he argues, is a necessary prerequisite to carrying out the intention of the state sentencing court that his [five-year] state sentence [imposed in Case

No. 05CR108] be served concurrently with his federal sentence." *Barden v. Keohane*, 921 F.2d 476, 477 (3d Cir. 1990); *see Reply* [#17] at 8 (the "Combined Court, Jefferson County, State of Colorado Judgment of Conviction in Case No. 05CR108" indicates that the five-year sentence is to run "concurrent with" Applicant's federal sentence from Case No. 05-cr-00014-REB).  Essentially, Applicant contends that he should receive credit towards the completion of his 36-month federal sentence for the period of time he was incarcerated with CDOC serving his five-year sentence from Case No. 05CR108.  If BOP now grants such credit, Applicant's 36-month federal sentence will be discharged, and he will be released from BOP custody.

"'In general, a federal prisoner [is not entitled to] be given credit [toward the completion of his federal sentence] for time spent in state prison on an unrelated charge.'" *Bloomgren*, 948 F.2d at 690 (quoting *United States v. Winter*, 730 F.2d 825, 826-27 (1st Cir. 1984)).  This rule applies even to situations – like the one here – in which a state court intended the sentence it imposed to be served concurrently with a previously imposed and undischarged federal sentence.  *See id.* at 691 ("[Defendant] thus served his [previously imposed] federal sentence after his state sentence, rather than serving them concurrently as anticipated by the state court.  Nonetheless, [defendant] is not entitled to credit on his federal sentence for time spent incarcerated on the state charges."); *accord Barden*, 921 F.2d at 478 n.4 ("We recognize that neither the federal courts nor [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently." (citing U.S. Const. art. VI, cl. 2)).  Thus, BOP is not required to credit the time that Applicant was incarcerated with CDOC serving his five-year sentence from Case No. 05CR108 toward the completion of his 36-month federal sentence.  Accordingly, the Court cannot

grant Applicant the relief he seeks (i.e., an order directing BOP to designate, *nunc pro tunc*, CDOC facilities as the place of service of his 36-month federal sentence beginning on June 25, 2007). *See Miller*, 594 F.3d at 1242 (explaining that because 18 U.S.C. § 3621(b) grants BOP the sole authority "to designate the place of a prisoner's imprisonment," a district court lacks jurisdiction to order BOP to designate, *nunc pro tunc*, a state facility as the place of service of a federal sentence).

Although a federal prisoner is not *entitled* to receive credit toward the completion of his federal sentence for time he previously served in state prison on an unrelated charge, BOP *may* grant such credit if it determines that doing so is appropriate under the particular circumstances of the prisoner's case. *Barden*, 921 F.2d at 478. As a practical matter, BOP grants a federal prisoner credit toward the completion of his federal sentence for time he previously served in state prison by designating, *nunc pro tunc*, the state prison as the place of service of the federal sentence. *Id.* at 480 (a period of "state incarceration can be credited against [an applicant's] federal sentence if [BOP] *nunc pro tunc* designates [the state prison] as the facility where [the applicant] served a portion of his federal sentence"); *see id.* at 481-82 (discussing BOP's statutory authority to make a *nunc pro tunc* designation). The decision whether to grant or deny credit – by either making or refusing to make a *nunc pro tunc* designation – is an "exercise of the broad discretion of the Federal Bureau of Prisons." *Id.* at 478; *see also id.* at 479 (stating that an applicant who seeks credit toward the completion of his federal sentence for time served in state prison "remains dependent on the discretion of [BOP]"). "The answer to [the question of whether a state prison should be designated, *nunc pro tunc*, as the place of service of a federal sentence] will depend on [BOP]'s practice in making such designations, as well as its assessment of

[the prisoner]'s conduct in custody, the nature of his crime, and all the other factors that govern penal authorities' consideration of a prisoner's request for relief from the strict enforcement of his sentence." *Id.* at 478.

In *Barden v. Keohane*, the Court of Appeals for the Third Circuit held that when a federal prisoner makes a request to receive credit toward the completion of his federal sentence for time he served on a state sentence that was intended by the state court to run concurrently with the federal sentence, BOP must consider the request. *Id.* ("[W]e hold only that the federal authorities have an obligation . . . to look at [the] case and exercise [their] discretion . . . to decide whether the state prison in which [the federal prisoner] [previously] served his [state] sentence should be designated as a place of federal confinement *nunc pro tunc*."); *id.* at 481 ("The [BOP] must at least consider [the] case in accord with the broad statutory authority it has to make *nunc pro tunc* designations, authority it openly recognizes[.]"); *BOP Program Statement No. 5160.05* [#18-13] at 6 ("In *Barden*, the court held that [BOP] must consider an inmate's request for concurrent service of the state and federal sentences.  However, there is no obligation under *Barden* for the [BOP] to grant the request[.]").  According to the Court of Appeals, if BOP fails to consider such a request, it commits a "fundamental" error that "carries a serious potential for a miscarriage of justice."  *Id.* at 478.  To correct this error, a district court may grant an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and compel BOP to consider the request.  *Id.* at 483 ("We hold only that [BOP] has power to grant relief, that [the prisoner] is entitled to have [BOP] examine his case and that habeas as authorized by 18 U.S.C. § 2241 is an appropriate judicial means of compelling that examination.").

In *Barden*, the Court of Appeals stopped short of recognizing that BOP violates a

prisoner's Fifth Amendment right to receive due process when it fails to consider his request to receive credit for time he served in state prison. *See id.* at 481 (stating that "Barden's reliance on [BOP's] Program Statement to create a due process interest, à la *Hewitt v. Helms*, 459 U.S. 460, 469-72 (1983), may be misplaced"). Instead, the Court of Appeals stated that a failure to consider such a request violates the prisoner's right "[u]nder [18 U.S.C. § 3621(b)] and [BOP]'s regulations . . . to 'fair treatment.'" *Id.* at 483 (quoting 28 C.F.R. § 541.12 (1989)); *see also id.* (stating that a federal prisoner "is not fairly treated when [BOP] fails to consider his request" for *nunc pro tunc* designation of a state prison as the place of service of his federal sentence).

In this case, Applicant alleges that BOP has refused to consider his request that CDOC facilities be designated, *nunc pro tunc*, as the place of service of his 36-month federal sentence beginning on June 25, 2007 (the date of sentencing in Case No. 05CR108). Relying on *Barden*, Applicant contends that this refusal violates his Fifth Amendment right to receive due process.[12] Although it is not clear from his Application, Applicant presumably seeks relief from this alleged violation in the form of an order directing BOP to examine and consider his request for *nunc pro tunc* designation.

Applicant's contention fails for two reasons. First, the Court of Appeals for the Tenth

---

[12] Applicant's reliance on *Barden* is somewhat misplaced. As explained above, *Barden* does not stand for the proposition that a federal prisoner has a constitutionally cognizable due process interest in having BOP examine and consider his request for *nunc pro tunc* designation of a state prison as the place of service of his federal sentence. In *Barden*, the Court of Appeals for the Third Circuit held that BOP is obligated to consider such a request, but it reasoned that this obligation stems from a prisoner's statutory and regulatory right to "fair treatment" – not from his 5th Amendment right to receive due process. *See Barden*, 921 F.2d at 481 and 483; *cf. Wojtkiewicz v. Gunter*, 978 F.2d 1268, 1992 WL 313120, at *2 (10th Cir. Oct. 23, 1992) (unpublished table decision) ("The mere fact that a prison violates its own rules does not create a due process violation." (citing *United States v. Caceres*, 440 U.S. 741 (1979))).

Circuit "has never adopted *Barden*." *Miller*, 594 F.3d at 1242.  Thus, in this Circuit, it is not clear that BOP is obligated to consider a prisoner's request for *nunc pro tunc* designation or that a district court can grant relief pursuant to 28 U.S.C. § 2241 in the form of an order compelling BOP to consider such a request.

Second, even if the Court assumes that it has the power to order BOP to consider Applicant's request for *nunc pro tunc* designation, it appears from the record that such an order is not necessary.  Respondents state in their Supplemental Status Report that BOP has now begun the process of considering whether Applicant should receive credit toward the completion of his federal sentence for the time he served on his five-year state sentence from Case No. 05CR108.  *Supplemental Status Report* [#54] at 2-3; *April 11, 2011 Declaration of Dennis Melick* [Docket No. 54-1] at 1, ¶ 4 ("The BOP is currently considering whether a retroactive 'nunc pro tunc' designation is appropriate for inmate Still's state sentence (05CR108) that was imposed after he was sentenced by the federal court [in Case No. 05-cr-00014-REB].").  "As part of this consideration, [BOP] contacted the federal sentencing court on April 8, 2011, seeking its position on whether" granting such credit is appropriate.[13]  *April 11, 2011 Declaration of Dennis Melick* [#54-1] at 1, ¶ 4; *see*

---

[13] Respondents state the following BOP policy: "If an inmate makes a request to [BOP] for a '*nunc pro tunc*' designation (i.e., occurring now as though it had occurred in the past) of his state institution as a federal institution, [BOP] will review the request under the provisions of 18 U.S.C. § 3624(b), as set forth in *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990)." *Answer* [#18] at 10.  Respondents also set forth BOP's procedure for reviewing such requests:

In making the determination whether a designation for concurrent service may be appropriate, [BOP] will send a letter to the sentencing court inquiring whether the court has any objections. [*See BOP Program Statement No. 5160.05* [#18-13] at 6]. If a response is not received from the sentencing court within 60 days, the bureau will address the issue and make a final decision.  *Id.*  Inmates must exhaust these remedies before seeking relief in a district court.  *See Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) [("A prisoner may bring a habeas action challenging

*April 8, 2011 Letter to Judge Blackburn* [Docket No. 54-1] at 3-4. Respondents assert that once a response is received from Judge Blackburn, BOP will complete its *Barden* analysis within five business days. *Supplemental Status Report* [#54] at 3. They further assert that "[i]f no response is received within 60 days, [BOP] will conduct its *Barden* analysis without input from Judge Blackburn." *Id.*

The only relief available on a *Barden* claim is an order directing BOP to examine and consider a prisoner's request for *nunc pro tunc* designation. Since BOP is now considering whether making a *nunc pro tunc* designation is appropriate in this case, Applicant's *Barden* claim is now moot. *See Sannon*, 631 F.2d at 1250 ("Striking at the very heart of federal subject matter jurisdiction, a mootness issue quite clearly can be raised *sua sponte* if not addressed by the parties."). Accordingly, the Court cannot grant Applicant any relief on his third claim.

### III. Conclusion

For the reasons set forth above, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2241. No evidentiary hearing is required. Accordingly, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#2] be **DENIED**.

The Court FURTHER **RECOMMENDS** that Applicant's first and second claims be **DISMISSED with prejudice**.

---

the BOP's execution of his sentence only if he first presents his claim to the BOP.")].

*Id.* at 11 (emphasis added); *see BOP Program Statement No. 5160.05* [#18-13] (providing "instructions for the designation of a state institution for concurrent service of a federal sentence").

The Court FURTHER **RECOMMENDS** that Applicant's claim for relief pursuant to *Barden* be **DISMISSED without prejudice**.

The Court FURTHER **RECOMMENDS** that Applicant be permitted to reassert his *Barden* claim in the event that BOP fails to complete as promised its consideration of whether he should receive credit toward the completion of his federal sentence for the time he served on his state sentence from Case No. 05CR108.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: April 18, 2011 at Denver, Colorado.

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix

United States Magistrate Judge